

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 19, 1960

Honorable Henry Wade
District Attorney
Records Building
Dallas, Texas

Opinion No. WW-907

Re: Method of determining
relative position of
political party tickets
on form of official
ballot used for general
election.

Dear Mr. Wade:

At the request of the Dallas County Election Board,[1] you have asked this office to render an opinion as to how and by whom the relative position of the tickets of opposing political parties on the official ballot for the general election should be determined. You have furnished us with an opinion which you have written to the Election Board on this subject, which reads as follows:

"As members of the Dallas County Election Board, in your letter of April 19, 1960, you request a legal opinion from this office as to how and by whom the relative position of the tickets of opposing political parties on the official ballot to be used in the forthcoming General Election should be determined.

"Your request was initiated by the request to you of the Dallas County Republican Executive Committee, by letter dated April 6, 1960, seeking your aid in adopting a procedure by which the party position on the ballot used in General Elections in Dallas County be determined by a drawing by lot.

"Article 1.03 of the Election Code provides:

"'Art. 1.03. Blanks furnished

---

[1] The county election board is comprised of the county judge, county clerk and sheriff. Art. 7.07, Vernon's Texas Election Code.

"'At least thirty days before each general election the Secretary of State shall prescribe forms of all blanks necessary under this Code and shall furnish same to each county judge. The Secretary of State shall at the same time certify to each county clerk a list of all the candidates who have been nominated for state office and for district office where the district consists of more than one county, if said district nominees have not been certified directly to the county clerk.'

"Heretofore, the form of ballot prescribed and furnished by the Secretary of State to the election officials of Dallas County, Texas has contained columns at the head of which were the names of the respective political parties and thereunder the names of candidates of such political party who had been nominated for national and state offices. Directions on such form were to the effect that the names of candidates nominated for local offices should be listed thereunder in the respective columns of the political party nominating such candidates.

"In the past the Dallas County Election Board has prepared the form of ballot used in the General Election in Dallas County, adopting the form prescribed and furnished by the Secretary of State, embracing the relative position on the form of the respective columns containing the ticket of each political party.

"We find no statute or other legal authority stating in what particulars and to what extent, if at all, the exact form prescribed and furnished by the Secretary of State may be altered at the discretion of local election authorities. Article 6.07 of the Election Code provides the Secretary of State shall hold a drawing to determine by lot the number and position on the ballot to be given to each proposition, question or proposed amendment to be submitted at a General Election. We find no statute nor other legal authority stating what method or procedure shall be used by the Secretary of State in determining the relative position on the ballot of the columns assigned to the various political parties.

"This office is of the opinion, and so holds, that it is _mandatory_ that local election officials

of Dallas County shall follow the form of ballot prescribed and furnished by the Secretary of State, including the relative position on the ballot assigned the respective political parties by the Secretary of State.

"As requested by you, we are forwarding this opinion to the Office of the Attorney General of Texas to obtain its opinion on the legal problems involved."

We are unable to agree with your conclusion that the county election board must observe the relative position of the respective political parties which appears on the ballot form furnished by the Secretary of State.

Article 1.03 of the Election Code provides that the Secretary of State shall prescribe "forms of all blanks necessary under this Code." The first question which comes to mind is whether the form of the ballot is included in the phrase "forms of all blanks." It could be argued that the Election Code itself (Article 6.05) prescribes the form of the ballot, and hence Article 1.03 does not apply to the ballot form.

Prior to 1903, the law provided that "forms of election notices, writs and returns shall be furnished by the Secretary of State to the county judge of each county." Art. 1726, Revised Civil Statutes of 1895. In 1903 this statute was superseded by Section 49 of Chapter 101, Acts of the 28th Leg., R.S., 1903, which read as follows:

"Forms of election notices, <u>official ballots</u>, writs, and election returns shall be prescribed by the Secretary of State to the county judge of each county at least thirty days before the general election. He shall also prescribe forms of tally sheets, polling lists, blank forms of instruction cards to voters, <u>forms of sample ballots</u>, and all other forms necessary to conducting an election." (Emphasis supplied.)

As in the earlier law, the Act of 1903 contained provisions describing the form and content of the ballot. Nevertheless, the statute imposed on the Secretary of State the duty to make up an actual form in accordance with these directions.

In 1905 the Legislature repealed the 1903 statute and enacted the Terrell Election Law (Chapter 11, Acts of the 29th Leg., 1st C.S.). Section 32 of the Terrell Election Law, on which the present Article 1.03 of the Election Code is based, read as follows:

"The Secretary of State shall at least
thirty days before the general election pre-
scribe to the county judge of each county forms
of all blanks necessary under this act."

It is reasonable to assume that the words "forms of all blanks"
was intended to include all the forms which had been specifi-
cally enumerated in the antecedent statute. For many years
it has been the practice of the Secretary of State to furnish
a ballot form to the county judges along with forms for elec-
tion notices, writs of election, poll lists, tally lists, re-
turns, and so on, and the administrative construction has been
that this was required by the statute. See Att'y Gen. Ops. 2899
(1932), O-2188 (1940) and O-6111 (1944).

On the assumption that Article 1.03 includes the
ballot form, we have the further question of whether the Secre-
tary of State's duty is merely to prescribe a general design
or format for the guidance of the local election boards in
making up the ballot for individual counties, or to prescribe
the exact arrangement of party columns, offices, and names of
candidates which each county must use. He is directed to pre-
scribe the form of the blanks. Manifestly he is not required
to fill in the election forms for each individual county so
that they will reach the county judge in completed shape to be
used for the election. With respect to the ballot form, the
magnitude of the task of making up the complete ballot for each
county would be sufficient reason for concluding that the
statute has no such intent, but another equally sufficient
reason is that the Secretary of State does not possess the
necessary information to enable him to make up the ballot for
district, county and precinct offices.[2]

The Secretary of State also does not possess the
necessary information to enable him to prescribe the order of

---

[2] While it is customary for the Secretary of State to list
on the ballot form the candidates which are to be voted on
throughout the State, arranged in party columns, the official
notification of the names of the candidates to be placed on
the ballot and the columns in which they are to appear is his
certification to the county clerks pursuant to the second
sentence of Article 1.03. In our opinion, the first sentence
of Article 1.03 does not require the Secretary of State to
include this information on the ballot. He could discharge
his duty to prescribe the form of the ballot merely by indi-
cating on the form that the state-wide offices and candidates
were to be listed thereon under the appropriate party column
without actually listing them, as is his practice with respect
to district, county and precinct offices.

the party columns on the ballot. Article 13.54 of the Election Code provides for nomination of candidates for county and precinct offices by parties without a state organization and for placing their nominees on the ballot under party columns. The nominees are certified to the county clerk, and the Secretary of State receives no notice that local parties are making nominations. While instances of nominations by local parties are rare, they sometimes do occur; and regardless of whether nominations are ever actually made under this statute, the possibility of such nominations must be taken into account in determining whether the Secretary of State has been given the responsibility or authority to prescribe the order of the party columns. In our opinion, he does not have this authority. If in the preparation of the ballot form he finds it convenient or expedient to illustrate its make-up by actually listing the state-wide nominations under the respective party columns, it is permissible for him to do so, but the county election boards are not compelled to follow the same order in the printing of the ballots for their respective counties. The county board may use the same order if it is a proper one, but its use is not mandatory.

You have mentioned that Article 6.07 of the Election Code provides that the Secretary of State shall hold a drawing to determine the number and position on the ballot to be given to constitutional amendments and other questions submitted in state-wide elections. This provision was added in 1935, and the reason for it is explained in the emergency clause of the amendatory act (Chapter 208, Acts of the 44th Leg., R.S. 1935):

> "The fact that it is desirable that constitutional amendments be submitted in uniform style in each county in the State, and be numbered for the purpose of facilitating identification of each such amendment * * * creates an emergency * * *."

The publicizing of constitutional amendments by number is the usual practice since enactment of the 1935 amendment, and its enactment was for that very purpose. There is no similar reason for uniform arrangement of party columns throughout the State, and consequently no reason for inferring from Article 6.07 that the Secretary of State is also required to determine that arrangement for state-wide observance. In primary elections, the order in which the names of state-wide candidates appear on the ballot is determined at the county level (Article 13.17, Election Code) and in view of this fact it could not be said that Article 6.07 indicates a legislative policy of uniform arrangement throughout the State for the state-wide candidates.

You have also asked how the relative order of the party columns is to be determined. As you have pointed out, the Election Code does not prescribe the method. This being so, the determination of the relative order is within the discretion of the county election board. The reasonableness of its action is subject to judicial review, but its decision will not be disturbed unless it acts "fraudulently or unfairly or upon a basis that is clearly improper and prejudicial." State ex rel. Catron v. Brown, 350 Mo. 864, 171 S.W.2d 696 (1943); 18 Am.Jur., Elections, § 166.

In other states, the manner of determining the arrangement of party columns is usually prescribed by statute. The most frequent arrangement is by the number of votes cast for the party nominee for a particular office (e.g., Governor, Secretary of State, "the head of the ticket") at the last preceding general election, the party casting the highest number of votes being given the first (left-hand) column, and so on in descending order of votes cast. Provision is sometimes made for the order in which the columns of parties which had no determining vote at the preceding election shall follow the columns of parties having a determining vote, such as by date of filing their nomination certificates or by alphabetical order. Other statutory methods are for all party columns to be arranged in alphabetical order and for the order to be determined by lot.[3] There have been court

_____

[3]In two states, by statute the Democratic Party is given the first column and the Republican Party the second column, and in two states the Republican Party is given the first column and the Democratic Party the second column, with the order in which minor parties appear being determined in various manners. In some states, it is expressly provided that the arrangement shall be in whatever manner the officer preparing the ballot shall determine, without any direction as to the method to be used.

In approximately one-third of the states, the ballot is not arranged in party columns. The names of all candidates for a particular office are listed under the office title, with the nominating party indicated by the candidate's name. Statutory methods for arrangement of the names include: alphabetical listing by name of the candidate; alphabetical listing by name of the nominating party; incumbent's name listed first if he is a candidate for re-election, and other names listed alphabetically; names listed in the order of the number of votes cast by the nominating party in the last preceding election; and by lot. Some states provide for a rotation of the order, so that there will be an approximately equal division of ballots on which each candidate's name appears in each position.

decisions affirmatively declaring some of these statutes to be valid, and we have not found any decision holding that either of the above-mentioned methods is invalid. We mention these methods by way of examples of how the order could be determined and not by way of excluding other possible methods.

## SUMMARY

The determination of the relative order of party columns on the general election ballot is within the discretion of the county election board. The reasonableness of its action is subject to judicial review, but its decision will not be disturbed unless it acts fraudulently or unfairly or upon a basis that is clearly improper and prejudicial.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Mary K. Wall*

Mary K. Wall
Assistant

MKW:bh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

W. Ray Scruggs
Wallace Finfrock
Howard Mays
Leon F. Pesek

REVIEWED FOR THE ATTORNEY GENERAL
BY:
　　　Leonard Passmore